**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MATTHEW ISRAEL, individually and on behalf of all other similarly situated stockholders of GREATBATCH, INC.<br><br>Plaintiff,<br><br>v.<br><br>PAMELA G. BAILEY, JOSEPH W. DZIEDZIC, JEAN HOBBY, THOMAS J. HOOK, M. CRAIG MAXWELL, FELIPPO PASSERINI, BILL R. SANFORD, PETER H. SODERBERG, WILLIAM B. SUMMERS, JR., and GREATBATCH, INC.<br><br>Defendants. | C.A. No. _____<br><br>**CLASS ACTION COMPLAINT** |

**VERIFIED CLASS ACTION COMPLAINT**

Plaintiff Matthew Israel ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, including a review of documents filed by Greatbatch, Inc. ("Greatbatch" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), except as to those allegations that pertain to the Plaintiff himself, which are alleged upon personal knowledge, as follows:

1. Having failed to prompt remedial action through a pre-litigation demand letter delivered to Greatbatch's board of directors (the "Individual Defendants" or "Board"), which completely ignored the letter, Plaintiff brings this class action on behalf of himself and the other stockholders of Greatbatch entitled to vote at the Company's Annual Meeting of Stockholders scheduled for May 24, 2016 (the "Annual Meeting"), against Greatbatch and its Board for statutory

violations and breach of fiduciary duty in connection with the Company's materially false and misleading Schedule 14A Definitive Proxy Statement filed with the SEC on April 18, 2016 (the "2016 Proxy").

2. In the 2016 Proxy, stockholders are being asked to approve, among other things, the Greatbatch, Inc. 2016 Stock Incentive Plan (the "Plan"). The Plan was adopted by the Board on March 1, 2016, subject to stockholder approval. If approved by stockholders, the Plan will supplement the Company's existing 2009 and 2011 Stock Incentive Plans in providing stock-based incentive compensation to employees, non-employee directors, consultants and service providers.

3. The 2016 Proxy affirmatively represents that the Plan limits the amount of awards that may be granted to an individual during any fiscal year to no more than 200,000 stock options and stock appreciation rights, and no more than 200,000 restricted stock, restricted stock units, and stock bonuses.

4. However, the 2016 Plan does not have a per-participant fiscal year limit. Rather, pursuant to the actual terms of the Plan, as opposed to the description in the 2016 Proxy, the Board would have unilateral authority to exceed the purported per-participant fiscal year limits that are falsely described in the 2016 Proxy as absolute. In fact, the "limits" described in the 2016 Proxy only apply to awards that the Board, in its discretion, "intends" to be tax-deductible under Section 162(m) of the Internal Revenue Code.

5. As such, the 2016 Proxy contains materially false and misleading statements that will prevent Greatbatch's stockholders from making an informed decision about whether to approve the Plan at the upcoming Annual Meeting.

6. Immediate action must be taken to enjoin this vote at the upcoming Annual Meeting before stockholders are forced to vote on the Plan based on the false and misleading 2016 Proxy.

7. Plaintiff attempted to resolve this issue without litigation by making a demand on the Board but did not receive an acknowledgement of his demand, much less a response.

8. Accordingly, through this action, Plaintiff seeks to enjoin the vote scheduled for the Annual Meeting seeking approval of the Plan until the Board corrects the materially false and misleading statements in the 2016 Proxy.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this Complaint alleges violations of § 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder. This Court has supplemental jurisdiction over the state law claims herein pursuant to 28 U.S.C. § 1367(a).

10. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. Venue is proper in this district pursuant to Section 27 of the Exchange Act and 28 U.S.C. §§ 1391(b) and (c) because Defendant Greatbatch is incorporated in this District and because a substantial portion of the wrongs complained of herein occurred in this District.

## PARTIES

11. Plaintiff purchased Greatbatch common stock in December 2015 and is, and has been at all relevant times, the owner of Greatbatch stock. Plaintiff is entitled to vote at the Annual Meeting.

12. Greatbatch, a corporation organized and existing under the laws of the State of Delaware, maintains its principal offices at 2595 Dallas Parkway, Suite 310, in Frisco, Texas. Greatbatch manufactures and develops medical device technologies primarily for large original equipment manufacturers.

13. Defendant Pamela G. Bailey has been a Greatbatch director since 2002. She serves as the Chair of the Corporate Governance and Nominating Committee and as a member of the Compensation and Organization Committee.

14. Defendant Joseph W. Dziedzic has been a Greatbatch director since February 2013. He serves as the Chair of the Audit Committee and a member of the Compensation and Organization Committee.

15. Defendant Jean Hobby has been a Greatbatch director since July 2015. She serves as the Chair of the Science and Technology Committee and a member of the Audit Committee.

16. Defendant Thomas J. Hook has been a Greatbatch director since 2006. He has been the Company's President and Chief Executive Officer since August 2006 and also serves as a member of the Science and Technology Committee.

17. Defendant M. Craig Maxwell has been a Greatbatch director since July 2015. He serves as a member of the Science and Technology Committee and a member of the Audit Committee.

18. Defendant Filippo Passerini has been a Greatbatch director since July 2015. He serves as a member of the Science and Technology Committee and Corporate Governance and Nominating Committee.

19. Defendant Bill R. Sanford has been a Greatbatch director since 2000. He serves as Chairman of the Board and a member of the Corporate Governance and Nominating Committee.

20. Defendant Peter H. Soderberg has been a Greatbatch director since 2002. He serves as Chair of the Compensation and Organization Committee and a member of the Audit Committee.

21.     Defendant William B. Summers, Jr. has been a Greatbatch director since 2001. He serves as a member of the Compensation and Organization Committee and the Corporate Governance and Nominating Committee.

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

22.     By reason of their positions as directors of the Company, the Individual Defendants owe the Company and its stockholders fiduciary obligations of good faith, loyalty, due care, and candor, and are required to manage the Company in a fair, just, honest, and equitable manner.

23.     Among other things, the Individual Defendants were and are required to make full, fair, and truthful disclosures to Greatbatch's stockholders, including when seeking stockholder approval for Board actions or proposals.

24.     The Individual Defendants, because of their positions with the Company, were able to and did in fact exercise control over the wrongful acts complained of herein.

**CLASS ACTION ALLEGATIONS**

25.     Pursuant to Federal Rule of Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who held Greatbatch stock as of the close of business on April 8, 2016, which is the record date for stockholders entitled to vote at the Annual Meeting (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable. According to the 2016 Proxy, the Company had 30,774,842 shares outstanding as of April 8, 2016. While the

exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, upon information and belief, there are thousands of members in the Class.

28. Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i) whether the 2016 Proxy contains materially false and misleading statements, or omits information necessary to render it not misleading;

(ii) whether Plaintiff and the other members of the Class would be irreparably harmed by the wrongs complained of herein;

(iii) whether Plaintiff and the Class are entitled to injunctive relief as a result of Defendants' wrongful conduct.

29. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. All Greatbatch stockholders face the same threat that they will be forced to vote at the Annual Meeting on the basis of the materially false and misleading 2016 Proxy. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30. The prosecution of separate actions by individuals members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

31. Defendants have acted, and refused to act, on grounds that apply generally to the Class, and are causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

32. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

### FURTHER SUBSTANTIVE ALLEGATIONS

**A. Section 162(m) of the Internal Revenue Code**

33. Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), subjects publicly-held corporations to special restrictions concerning the compensation paid to their chief executive officer and the next three most highly compensated executives of the company, not including the chief financial officer (the "Covered Employees").

34. According to its legislative history, Section 162(m) was motivated by concerns about corporate abuses involving excessive executive compensation in public companies, and the law is intended to bring about a reduction in the prevalence of these abuses.

35. Whereas Section 162(a)(1) of the Code generally allows a publicly-held corporation to take an income tax deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, Section 162(m) provides that compensation in excess of $1 million paid by a publicly-held corporation to a Covered Employee is generally not tax-deductible.

36. Section 162(m)(4)(C) provides an exception to this rule in the case of compensation that is structured in a manner that qualifies as "performance-based compensation." The ability to take advantage of this exception is guided by Section 1.162-27 of the Treasury Regulations ("Treas. Reg.") promulgated under Section 162(m), which provides a set of rules that must be followed in order for compensation to qualify as "performance-based compensation" and be tax-deductible under §162(m)(4)(C).

37. Among the rules, Section 1.162-27(e)(4) of the Treasury Regulations establishes certain stockholder-approval requirements. As stated in Treas. Reg. §1.162-27(e)(2)(vi)(A), with respect to stock options and stock appreciation rights, a company's stockholder-approved compensation plan pursuant to which such awards are granted must disclose "the maximum number of shares with respect to which options or rights may be granted during a specified period to any employee."

38. Similarly, as stated in Treas. Reg. §1.162-27(e)(4)(i), with respect to all other compensation, the Company must disclose and receive stockholder approval of "either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained."

39. Stockholder-approved compensation plans that contain these limits, and otherwise satisfy the other requirements contained in Section 162(m) and its regulations, provide companies with the ability to grant awards under that plan that qualify as "performance-based compensation" under Section 162(m).

**B. Greatbatch's 2016 Stock Incentive Plan**

40. As adopted by the Board on March 1, 2016, 1.45 million shares of Greatbatch common stock are reserved under the Plan. If the Plan is approved by stockholders, the Board would be authorized to issue these 1.45 million shares in the form of stock options, stock appreciation rights, restricted stock, restricted stock units and stock bonuses to eligible recipients.

41. The Board's Compensation Committee (the "Compensation Committee") is designated as the administrator of the Plan.

42. The Board is seeking approval of the Plan in part to enable the company to take deductions for performance-based compensation under Section 162(m). But the terms of the Plan do not contain any actual per-person annual limit on awards. Instead, Section 3(d) of the Plan states:

> The aggregate number of shares of Company Stock subject to (i) Options and SARs awarded to any one employee during any fiscal year of the Company, including awards made pursuant to Section 12, shall not exceed 200,000 shares, and (ii) Incentive Awards, other than Options and SARs, awarded to any one employee during any fiscal year of the Company shall not exceed 200,000 shares. Determinations under the preceding sentence shall be made in a manner that is consistent with Section 162(m) of the Code and regulations promulgated thereunder. **The provisions of this Section 3(d) shall not apply *in any circumstance* with respect to which the Committee determines that compliance with Section 162(m) of the [Internal Revenue] Code is inadvisable or unnecessary.** (emphasis added).

43. As described in detail below, because the Board has no obligation (under the Plan or otherwise) to grant awards that are compliant with Section 162(m), the Board is free to ignore the numerical "limits" contained in Section 3(d) and grant an unlimited amount of shares to any given plan participant during any given year (subject only to the Plan's 1.45 million aggregate share limit).

## C. The 2016 Proxy

44. In the 2016 Proxy, the Board is seeking stockholder approval of the Plan in Proposal 2, titled "Approval of the Adoption of the Greatbatch, Inc. 2016 Stock Incentive Plan."

45. According to the 2016 Proxy, the Plan is intended to enable the Company to "attract and retain talented employees and the services of select non-employees, further align employee and stockholder interests and closely link employee compensation with Company performance." As further stated in the 2016 Proxy: "If approved, the 2016 Plan will provide an essential

component of the total compensation package offered to employees, reflecting the importance that the Company places on motivating superior results with long-term incentives."

46. In stark contrast to the Plan itself, the 2016 Proxy affirmatively and unequivocally represents that the Plan imposes an absolute limit on the amount of awards that may be granted to an individual during any fiscal year, expressly stating that no one may receive in any fiscal year more than 200,000 stock options and stock appreciation rights, or more than 200,000 restricted stock, restricted stock units, and stock bonuses.

47. Specifically, under a section titled "Key Terms," the 2016 Proxy discloses the "material features" of the Plan as follows:

> *Not Permitted:*
>
> (1) Granting stock options or stock appreciation rights at a price below market price on the date of grant.
>
> (2) Repricing of a stock option or stock appreciation right without stockholder approval.
>
> **(3) Granting stock options and stock appreciation rights to any one employee during any fiscal year in excess of 200,000 shares.**
>
> **(4) Granting restricted stock, restricted stock units and stock bonuses to any one employee during any fiscal year in excess of 200,000 shares.**
>
> (5) Granting shares of Company Stock subject to incentive awards awarded during a single fiscal year to any non-employee director, taken together with any cash fees paid to such non-employee director during the fiscal year, in excess of $500,000 in total value. (emphasis added.)

48. The 2016 Proxy further discloses "several features" of the Plan that are "considered compensation and governance best practices," and states that the Plan "generally limits the number of shares that may be awarded to any person in any fiscal year."

49. However, according to the actual terms of the Plan as opposed to the description in the 2016 Proxy, the per-participant fiscal year limits are *not applicable* to any award so long as

the Compensation Committee unilaterally "determines," presumably at any point in time, that compliance with Section 162(m) of the Internal Revenue Code ("Section 162(m)") is "inadvisable or unnecessary."

50.   Other things being equal, the Board has no obligation – whether under the federal securities laws, the Internal Revenue Code, its fiduciary duty to shareholders, or otherwise – to grant awards that qualify as tax deductible "performance-based compensation" under Section 162(m).

51.   Similarly, the terms of the Plan contain no requirement that all awards granted under the Plan qualify as "performance-based compensation" under Section 162(m). Instead, the Plan provides the Compensation Committee with complete discretion in determining whether or not to grant awards that would qualify for the deduction.

52.   Thus, if stockholders approve the Plan, the Board will be empowered to grant an unlimited amount of shares to any given plan participant during any given year (subject only to the Plan's 1.45 million aggregate share limit) simply by unilaterally and at any point in time "determin[ing] that compliance with Section 162(m) of the [Internal Revenue] Code is inadvisable or unnecessary."

53.   In light of this, there are effectively no per-participant annual limits in the Plan, as the Board is in fact bound by no actual limit other than the Plan's 1.45 million share limit on awards that may be made to all Plan participants in the aggregate during the 10-year life of the Plan. In other words, the purported "limits" described in the 2016 Proxy are entirely illusory and the 2016 Proxy is materially misleading as a result.

54. The amount of awards, and particularly the amount of "full-value awards,"[1] that can be granted under the Plan to a single person in one year is information that a reasonable stockholder would find important in determining whether to approve the Plan.

55. The 1.45 million shares of Greatbatch common stock reserved for issuance under the Plan represents approximately 4.71% of the Company's outstanding common stock as of March 1, 2016.

56. As shares are issued under the Plan, the Company's existing stockholders will be diluted. Thus, a reasonable stockholder would find it important to know the scope of the Board's authority to issue shares of common stock under the Plan if it is approved.

57. Specifically, a reasonable stockholder would find it important to know that the Plan does not actually contain annual limits and that the Board instead has complete discretion to grant any participant an unlimited amount of awards, particularly full-value awards (subject only to the Plan's 1.45 million share aggregate limit) at any time.

58. As an example, pursuant to the Plan's actual terms, the Board could grant all 1.45 million shares to Greatbatch's Chief Executive Officer as a stock bonus or restricted stock award in a single year, thereby causing substantial dilution to the Company's public stockholders without accomplishing the Plan's stated purposes.

59. A reasonable and fully informed stockholder, concerned about unfair executive compensation specifically, or dilution generally, may consider voting against such a plan.

---

[1] Under the Plan, the "full-value" awards consist of restricted stock, restricted stock units, and stock bonuses. A "full-value" award, unlike stock options or stock appreciation rights, has no purchase or exercise cost to the recipient; rather, the recipient receives the full value of each share that is awarded.

60. Because of the Board's affirmative misrepresentations regarding the Plan's material terms, Greatbatch stockholders are being misled about the material terms of the Plan that they are being asked to approve and they are unable to make an informed decision in determining whether to approve the Plan. Accordingly, the Board has breached its fiduciary duty of candor by issuing the materially false and misleading 2016 Proxy.

61. The SEC's regulations also mandate full and accurate disclosure of the Plan's actual terms. Specifically, Item 10 of Schedule 14A, titled *Compensation Plans*, provides the mandated disclosures when a compensation plan is being approved or amended. It requires disclosure of the "material features of the plan being acted on."

62. Federal law specifically identifies the per-participant limit as one of the "material terms" of a compensation plan. *See* Treas. Reg. §1.162-27(e)(4)(i).

63. Thus, by affirmatively misrepresenting the actual terms of the Plan the Board is asking stockholders to approve, the Board is also violating SEC regulations.

64. As a result, Plaintiff seeks to enjoin the vote at the Annual Meeting seeking approval of the Plan unless and until the Board amends the 2016 Proxy to correct the materially false and misleading statements described herein.

**D. The Board ignored Plaintiff's Demand to Cure the 2016 Proxy**

65. Plaintiff attempted to procure corrections to the 2016 Proxy without the need to resort to litigation.

66. In a letter to the Board dated April 18, 2016, Plaintiff explained why the 2016 Proxy was materially false and misleading and demanded that the Board issue a supplemental disclosure to correct the 2016 Proxy before the Annual Meeting (the "Demand"). Plaintiff's letter was delivered the following morning via overnight courier.

67. While the Demand fully described the basis for this lawsuit, its express purpose was to give the Board the opportunity to avoid the instant litigation. The Demand afforded the Board ample time to address the problem but made it clear that Plaintiff intended to proceed with litigation if the Board failed to respond within ten days.

68. Plaintiff received no response to, or acknowledgment of, his Demand. The Board's decision to ignore the Demand made it necessary for Plaintiff to initiate this action in advance of the Annual Meeting.

## COUNT I
**Violation of Section 14(a) of the Securities Exchange Act and Rule 14a-9 Thereunder
(Against Defendants)**

69. Plaintiff repeats all previous allegations as if set forth in full herein.

70. Rule 14a-9, promulgated pursuant to Section 14(a), provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

71. The 2016 Proxy violates Section 14(a) and Rule 14a-9 because it contains false and misleading statements concerning the Plan's annual per-person grant limits and omits material information necessary in order to make the statements therein not false or misleading, specifically, that the purported limits may be exceeded in the Board's unilateral discretion.

72. As explained above, the misrepresentations in the 2016 Proxy are material.

73. As a direct and proximate result of the foregoing statutory violation, Plaintiff is entitled to equitable and injunctive relief, including but not limited to an order enjoining the vote on Proposal 2 at the Annual Meeting unless and until Defendants issue corrective disclosures.

74. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Breach of Fiduciary Duties
### (Against the Individual Defendants)

75. Plaintiff repeats all previous allegations as if set forth in full herein.

76. The Individual Defendants owe Greatbatch's stockholders a fiduciary duty that requires candid, full and accurate disclosure of all information that is material to the decisions confronting Greatbatch's stockholders at the Annual Meeting.

77. As explained above, the Individual Defendants have breached their fiduciary duty by filing the 2016 Proxy and making the materially false and misleading statements contained therein. The failure to fully and fairly disclose all material information in the 2016 Proxy will prevent Plaintiff and the Class from making an adequately informed decision at the Annual Meeting regarding whether to approve the Plan.

78. Unless the vote on Proposal 2 at the Annual Meeting is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties to Plaintiff and the other members of the Class.

79. As a result, Plaintiff and the Class members are being, and will continue to be, harmed irreparably.

80. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Enjoining the vote at the Annual Meeting seeking approval of the Plan unless and until the corrective action described above is taken;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

D. Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: May 6, 2016

PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com
*Attorneys for Plaintiff*

Of Counsel:

Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
PURCELL JULIE & LEFKOWITZ LLP
65 Broadway, Suite 828
New York, New York 10006
212-725-1000